UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LTL LED, LLC, D/B/A/ Wolf River Electric, Justin Nielsen, Vladimir Marchenko, Luka Bozek, Jonathan Latcham,<br><br>                     Plaintiffs,<br>v.<br><br>Google LLC,<br><br>                     Defendant. | Civil No.:  25-cv-02394 (JMB/DJF)<br><br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND** |

## INTRODUCTION

From the outset, this case has been marked by Defendant Google LLC's ("Google") procedural missteps. Google failed to timely answer the Complaint under Minnesota law, improperly served its untimely response, and ignored formal communications regarding its default. These missteps culminated in a removal that was nearly two months late and unsupported by any credible justification.

Although federal diversity jurisdiction under 28 U.S.C. § 1332 may have existed, removal was plainly untimely under 28 U.S.C. § 1446(b)(1). Google was served the Summons, Complaint, and an accompanying letter on March 14, 2025, which clearly placed it on notice that the amount in controversy greatly exceeded $75,000. The 30-day deadline to remove thus expired on April 13, 2025. Google did not file its Notice of Removal until June 9, 2025—well after the statutory window had closed.

Because the removability of this case was apparent from the outset, and because Google's removal is procedurally defective and untimely, remand is mandatory.

Therefore, Plaintiffs LTL LED, LLC d/b/a Wolf River Electric ("Wolf River"), Justin Nielsen, Vladimir Marchenko, Luka Bozek, and Jonathan Latcham (collectively "Plaintiffs") respectfully requests that this matter be remanded to the state court from which it was removed pursuant to 28 U.S.C. § 1447(c).

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Wolf River commenced this defamation action in Minnesota state court by personally serving its Summons and Complaint on Google on March 14, 2025.[1] In its Complaint, Wolf River alleged that Google was producing and publishing statements on the internet that falsely informed the public that Wolf River was facing a lawsuit from the Minnesota Attorney General, among other things, and that Google's false and defamatory statements had caused and was continuing to cause significant damage to Wolf River. Specifically, Wolf River alleged in its Complaint that Google's false and defamatory statements had already caused Wolf River to lose hundreds of thousands of dollars in customer accounts, stating in relevant part:

> 122. On March 3, 2025, a customer identifiable and recorded by Wolf River as contract number KSKAU-MYAVG-KA658-5KUFQ, terminated his relationship with Wolf River. The customer referred to lawsuits that appear when he "Googled" Wolf River.
>
> 123. This contract was for a 12.8 kilowatt solar system, consisting of 32 Waaree-WSMDI-400 solar panels, three roof mounting arrays, and 32 IQ7HS-66-M-US solar inverters. The total contract price was **$39,680.00**.
>
> 124. On March 4, 2025, a customer met with a sales representative of Wolf River and refused to do business with Wolf River. This customer

---

[1] *See* Decl. of Nicholas Kasprowicz Ex. A (Affidavit of Service). Wolf River's original Summons and Complaint were later filed in this Court on June 9, 2025, as Exhibit 1 (Doc. 1-1) to Google's Notice of Removal (Doc. 1).

2

stated that they did research online and saw Wolf River was being sued by the Minnesota Attorney General.

125. The solar system proposal for this customer was for **$26,400.00**.

. . .

127. On March 5, 2025, a customer of Wolf River, identified by contract number YKUFU-AH78H-PMNDF-K3C7V, contacted Wolf River and expressed concerns because of the publications on Google alleging Wolf River was being sued for misleading customers about cost savings, using high-pressure tactics, and tricking homeowners into signing binding contracts with hidden fees.

128. Despite the CEO of Wolf River reassuring this customer that the publications by Google are false, this customer chose to terminate the relationship with Wolf River because of Google.

129. This contract was for a large solar system of 44.2 kilowatts, consisting of 104 Maxeon SPR-M425-BLK-AC solar panels and 104 Enphase IQ7HS solar inverters. The total contract price was **$150,000.00**.

130. On March 11, 2025, a non-profit organization informed Wolf River that they were "pulling the plug" on their business relationship because of "several lawsuits in the last year" with the "Attorney General's Office." This customer terminated a solar project with a price of **$147,400.00** and a lighting project with a price of **$26,644.12**.[2]

Wolf River's totals losses from just the five projects described in the Complaint amounts to $390,124.12.

After expressly alleging losses totaling $390,124.12, Wolf River asserted five claims against Google, including defamation (Count I), defamation per se (Count II), defamation by implication (Count III), violation of the Minnesota Deceptive Trade Practices Act (Count IV), and declaratory judgment (Count V). Consistent with

---

[2] Compl. (Doc. 1-1) at ¶¶ 122-25, 127-30 (emphasis added).

Minnesota law, Counts I-III alleged that Wolf River had suffered damages "in an amount exceeding $50,000, to be determined by a jury," and the prayer for relief sought separate monetary judgments on each of these counts "in an amount in excess of $50,000."[3] *See* Minn. Stat. § 544.36 ("If a recovery of money in an amount greater than $50,000 is demanded, the pleading **shall state** merely that recovery of reasonable damages in an amount greater than $50,000 is sought."); Minn. R. Civ. P. 8.01 ("If a recovery of money for unliquidated damages in an amount greater than $50,000 is demanded, the pleading **shall state** merely that recovery of reasonable damages in an amount greater than $50,000 is sought."). Count IV of the Complaint additionally sought injunctive relief "plus attorneys' fees, costs, and disbursements to the extent permitted by law for Google's violation of the Minnesota Deceptive Trade Practices Act."[4]

Included with the Summons and Complaint, Wolf River also served a letter on March 14, 2025 (the "Settlement Letter"), placing Google on notice that damages were still being calculated, but that over $24 million in losses were directly attributable to Google's defamation during 2024 alone.[5] Specifically, Wolf River's Settlement Letter expressly stated:

> Our Chief Financial Officer, a highly credentialed CPA, has completed a comprehensive financial analysis and determined that Wolf River Electric suffered **$24.7 million in damages in 2024** due to Google's defamation. Wolf River's damages for 2025 are ongoing, and more instances of ramifications directly from Google's defamation continue to arise every day.[6]

---

[3] Compl. (Doc. 1-1) at ¶¶ 212, 224, 253, and the prayer for relief.
[4] Compl. (Doc. 1-1) at ¶ 264.
[5] Decl. of Nicholas Kasprowicz Ex. B.
[6] *Id.* at 2 (emphasis in original).

Later in the Settlement Letter, Wolf River repeated the assertion that its damages totaled at least $24.7, and expressly noted that this figure did not include future damages:

> While damages are presumed under defamation per se and do not require proof, **Wolf River has suffered a clear, quantifiable financial loss directly attributable to Google's defamation, totaling $24.7 million**. Moreover, future damages continue to accrue, and a comprehensive financial analysis, likely requiring testimony from multiple expert witnesses, will be necessary to assess the full extent of ongoing and anticipated losses.
>
> This analysis must also account for future damages spanning the entire anticipated lifetime of Wolf River's business, ensuring that the full scope of economic harm caused by Google's defamation is properly quantified and addressed.[7]

Google failed to serve an answer within the 21-day deadline required by Minn. R. Civ. P. 12.01.[8] On April 8, 2025, Wolf River's General Counsel sent a meet-and-confer communication notifying Google's counsel of its default.[9] No response was received until April 16, 2025, when attorney Matt Macdonald responded by email and requested a meeting.[10] The parties met on April 18, 2025, to discuss the matter.[11] During the meeting, Wolf River's General Counsel specifically asked Mr. Macdonald whether he had reviewed the Settlement Letter, and he confirmed that he had.[12] Wolf River's counsel explained that Wolf River was not in a position to make a complete settlement demand until it retained experts to fully evaluate the total impact of Google's defamatory

---

[7] *Id.* at 3 (emphasis added).
[8] Decl. of Nicholas Kasprowicz ¶ 4.
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶ 5.
[12] *Id.*

statements, but he reiterated that Wolf River had already calculated its damages to exceed $24 million for 2024 alone.[13] Mr. Macdonald offered no justification for Google's failure to answer the Complaint in a timely manner.[14]

The deadline for Google to remove the matter to federal court under 28 U.S.C. § 1446(b)(1) was April 13, 2025, 30 days from service of the Complaint and Settlement Letter.[15] No removal was filed by that date. Instead, on April 22, 2025, attorney Justice Lindell emailed a copy of Google's Answer to Nicholas Kasprowicz, Wolf River's General Counsel.[16] The Answer was never formally served as required under Minn. R. Civ. P. 5.02.[17]

Following receipt of Google's Answer, Wolf River's General Counsel requested a Minn. R. Civ. P. 26.06 discovery conference.[18] The parties conducted that conference on April 29, 2025, and jointly developed a proposed discovery plan.[19] On May 8, 2025, Wolf River served its first set of written discovery requests on Google.[20] Google refused to answer or produce any documents, but ultimately served objections 33 days later.[21]

On May 23, 2025, Wolf River served an Amended Complaint to include four of its executives as additional plaintiffs.[22] Then, on June 9, 2025, nearly two months after being

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 6.
[16] *Id.*
[17] *Id.*
[18] *Id.* at ¶ 7.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at ¶ 8.

told that Wolf River was seeking damages in excess of $24.7 million, Google filed a Notice of Removal, removing this proceeding to this Court.[23]

## LEGAL STANDARD

A defendant desiring to remove any civil action from a state court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal. 28 U.S.C. § 1446(a). The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. 28 U.S.C. § 1446(b)(1). Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper** from which it may **first be ascertained** that the case is one which is or has become removable." (emphasis added). "Courts have defined 'other paper' broadly to include any formal or informal communication received by a defendant." *Cooper v. Steele*, No. 13-CV-2622 SRN/LIB, 2014 WL 3734255, at *7 (D. Minn. July 29, 2014). Although the "time limitations of 28 U.S.C. s 1446(b) are not jurisdictional, **they are mandatory** and are to be **strictly construed**." *Percell's Inc. v. Cent. Tel. Co.*, 493 F. Supp. 156, 157 (D. Minn. 1980) (emphasis added); *Greising v. C.P. Chem. Co.*, 646 F. Supp. 553, 554 (D. Minn.

---

[23] *Id.*; *see also* Notice of Removal (Doc. 1).

1986) ("The time limitations of 28 U.S.C. § 1446 (the removal statute) are mandatory and are subject to strict construction.").

Following removal of a case to federal court, a plaintiff can seek remand of the action back to state court by filing a motion to remand within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c). In evaluating a motion to remand, removal statutes must be strictly construed in favor of state court jurisdiction, and district courts "are required to resolve all doubts about federal jurisdiction in favor of remand." *In re Business Men's Assurance Co. of Am.,* 992 F.2d 181, 183 (8th Cir. 1993); *Lochthowe v. State Farm Mut. Auto. Ins. Co.,* 470 F. Supp. 2d 1033, 1034 (D.N.D. 2007); *Capehart–Creager Enters., Inc. v. O'Hara and Kendall Aviation, Inc.,* 543 F. Supp. 259, 262 (W.D. Ark. 1982). It is well-established that the removing party bears the burden of showing that removal was proper. *In re Business Men's Assurance Co. of Am.,* 992 F.2d at 183; *Lochthowe,* 470 F. Supp. 2d at 1034; *see also Nagel v. Wal–Mart Stores, Inc.,* 319 F. Supp. 2d 981, 983 (D.N.D. 2004).

## ARGUMENT

**A.   The Complaint clearly asserts damages in excess of $75,000, and the case was therefore immediately removable.**

Google's claim that it could not determine the amount in controversy until it received Plaintiffs' initial disclosures is factually and legally unfounded. When calculating the amount in controversy for purposes of determining jurisdiction under §

8

1332, the Eighth Circuit has long recognized that damages sought by a single plaintiff via two or more claims against a single defendant may be aggregated. *Spears v. Robinson*, 431 F.2d 1089, 1093 (8th Cir. 1970); *Turntine v. Peterson*, 959 F.3d 873, 880 n.1 (8th Cir. 2020) (citing *Spears*) ("The damages sought by a single plaintiff via two or more claims against a single defendant may be aggregated for purposes of calculating the amount in controversy.").

Applying this rule, the Eighth Circuit has confirmed that separately pleaded defamation counts are to be aggregated to satisfy § 1332's $75,000 requirement. *See Turntine*, 959 F.3d at 880. In *Turntine*, the plaintiffs asserted three defamation claims, each alleging damages "in excess of $20,000," plus punitive damages. *Id.* Affirming federal jurisdiction, the appellate court explained that where a complaint seeks open-ended damages ("in excess of"), the amount in controversy is measured not by the floor of each claim, but by "a reasonable reading of the value of the rights being litigated." *Id.* (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

Here, as in *Turntine*, the Complaint sets out three distinct defamation causes of action—defamation, defamation per se, and defamation by implication—each alleging damages "in an amount exceeding $50,000." The prayer for relief then seeks a separate monetary judgment on each of the three counts, exceeding $50,000 on each count, as well as attorneys' fees, costs, and disbursements on Count IV. Under *Turntine*, Wolf River's three defamation counts, each pleaded "in excess of $50,000" as required by Minnesota Rule 8.01, must be aggregated. Even on the most conservative reading, that totals at least $150,000, and that figure does not include the additional attorneys' fees and court costs

9

Plaintiffs expressly seek. Once those recoverable expenses are added, the amount in controversy soars even farther above the $75,000 threshold, leaving no doubt that federal jurisdiction was apparent, and that Google's thirty-day removal window began the day it was served.

Further, even without aggregating Wolf River's three defamation claims, the Complaint's factual allegations put Google on unmistakable notice that the amount in controversy dwarfed the $75,000 jurisdictional minimum. Federal courts have consistently held that a defendant must "apply a reasonable amount of intelligence in ascertaining removability," which includes nothing more taxing than "multiplying figures clearly stated in a complaint." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013); *Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 74-75 (1st Cir. 2014). In its Complaint, Wolf River expressly alleged that Google's false and defamatory publications had caused it to lose five contracts valued at $39,680, $26,400, $150,000, $147,400, and $26,644.12, respectively.[24] The necessary arithmetic, adding five plainly listed numbers, yields an alleged damage figure of $390,124.12. Because Google had all the facts it needed on the day of service to ascertain the amount in controversy, its failure to perform this elementary calculation does not pause § 1446(b)(1)'s thirty-day clock. Rather, it simply confirms that Google's June 9 notice of removal was untimely and must be rejected.

**B.      Even If the Complaint Alone Were Somehow Ambiguous, the "Other Paper" Served With It Removed All Doubt.**

---

[24] Compl. (Doc. 1-1) at ¶¶ 122-25, 127-30

Assuming arguendo that the damages figures in the Complaint did not, by themselves, make the amount in controversy "explicitly" clear, the Settlement Letter served contemporaneously with the Summons and Complaint certainly did. Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper** from which it may **first be ascertained** that the case is one which is or has become removable." (emphasis added). Federal courts in Minnesota and elsewhere have "defined 'other paper' broadly to include any formal or informal communication received by a defendant," noting that the "label given to the document is not what is relevant, rather; it is what the document says and whether it includes information from which the defendant **should have ascertained that removability was possible**." *Cooper*, 2014 WL 3734255, at *7 (emphasis added); *see also id.* at *7-8 (holding that "the damages section of Plaintiff's state court memorandum … identified Defendants' proceeds of $4,641,000 that were allegedly received as a result of misappropriating Plaintiff's name" and constituted "a 'motion' or 'other paper' from which [defendant] could have ascertained that the case was removable").

Of particular relevance here, Minnesota courts have specifically recognized that demand letters and settlement communications constitute "other paper" for purposes of 28 U.S.C. § 1446(b)(3). For example, in *Groeneweg v. Flint Hills Res., LP.*, the court held that a written settlement demand to the defendant in the amount of $85,000 was sufficient to commence the 30-day removal period, stating:

> On July 21, 2008, Defendant received a written settlement demand from Plaintiff in the amount of $85,000. The Court concludes that this settlement demand constitutes an "other paper" under § 1446(b). *See, e.g., Addo v. Globe Life and Accident Ins. Co.,* 230 F.3d 759, 761–62 (5th Cir.2000); *Babasa v. Lenscrafters, Inc.,* 498 F.3d 972, 975 (9th Cir. 2007). The record reveals that July 21, 2008 was the date Plaintiff first indicated that he sought more than the federal jurisdictional amount. Therefore, the thirty-day removal deadline began to run on July 21, 2008.

No. CIV. 08-4815DWFFLN, 2008 WL 4951494, at *3 (D. Minn. Nov. 18, 2008).

The court reached a similar conclusion in *Repco Inc. v. Flexan, LLC*, under circumstances similar to those at issue here. No. CV 19-41(DSD/HB), 2019 WL 1170667, at *1 (D. Minn. Mar. 13, 2019). In *Repco*, the plaintiff served a complaint on July 23, 2018, which sought "more than $50,000 in damages." *Id.* A few weeks later, on August 15, 2018, the plaintiff sent the defendant a demand letter "representing that it suffered over $3,000,000 in damages." *Id.* Despite receiving a letter clearly indicating damages above the jurisdictional threshold, the defendant in *Repco*—like Google in this case—did not seek to remove until after receiving the plaintiff's initial disclosures on December 28, 2018, which again represented that the plaintiff's damages were "over $3,000,000." *Id.* Because the plaintiff's August 2018 letter put the defendant on notice that the damages exceeded $75,000, the court concluded that it was required to remand the case back to Hennepin County District Court, holding:

> Repco's August 2018 demand letter stated that it suffered over $3,000,000 in damages. **Settlement demands and other documents that include information "from which the defendant should have ascertained that removability was possible" constitute "other paper" under § 1446(b)(3)**. *Cooper v. Steele*, No. 13–2622, 2014 WL 3734255, *7 (D. Minn. July 29, 2014); *see also Groeneweg v. Flint Hills Res.*, No. 08-4815, 2008 WL 4951494, at *2 (D. Minn. Nov. 18, 2008); *Cooper v. S and H, Inc.*, No. 11-2783, 2012 WL 245116, at *3 (D. Minn. July 12, 2012). **As a result, Flexan**

12

> **was on notice as of August 15, 2018, that the amount in controversy exceeded the jurisdictional requirement**. Despite that fact, Flexan did not remove the case until January 7, 2019, long after the removal period expired. **As a result, the court must remand this case to the Hennepin County District Court**.

*Id.* at *2 (emphasis added).

Like the settlement demand at issue in *Repco*, Wolf River's Settlement Letter informed Google that Wolf River's damages calculations were ongoing but had already reached $24.7 million for calendar year 2024 alone. In other words, the Settlement Letter provided information from which Google "should have ascertained that removability was possible," thereby constituting an "other paper" under 28 U.S.C. § 1446(b)(3) and triggering Google's 30-day removal deadline. *See id.* That deadline expired on April 13, 2025, nearly two months before Google's June 9 Notice of Removal. Because Google failed to file is Notice of Removal within the time limits proscribed by 28 U.S.C. § 1446, the Court must remand the case back to state court. *See, e.g.*, *Greising*, 646 F. Supp. at 554 ("The time limitations of 28 U.S.C. § 1446 (the removal statute) **are mandatory** and are subject to strict construction.") (emphasis added).

## CONCLUSION

Based on the express allegations in the Complaint and the representations made in the Settlement Letter that accompanied it, Google was on notice as of March 14, 2025, that the amount in controversy greatly exceeded the jurisdictional threshold. Because Google's Notice of Removal was filed nearly two months after the 30-day deadline set by 28 U.S.C. § 1446, its removal was untimely, and the Court should remand the case back to the Ramsey County District Court.

**HENSON & EFRON, P.A.**

Dated: July 9, 2025         By */s/ Court J. Anderson*
                            Court J. Anderson, #331570
                            Benjamin J. Hamborg, #0395401
                            225 South Sixth Street, Suite 1600
                            Minneapolis, MN 55402-4652
                            (612) 339-2500
                            canderson@hensonefron.com
                            bhamborg@hensonefron.com

                            ***ATTORNEYS FOR PLAINTIFFS***