UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LTL LED, LLC, D/B/A Wolf River Electric; Justin Nielsen; Vladimir Marchenko; Luka Bozek; and Jonathan Latcham,<br><br>Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>Defendant. | Case No. 0:25-cv-02394-JMB-DJF |

**DEFENDANT GOOGLE LLC'S RESPONSE (1) IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND TO STATE COURT AND (2) IN SUPPORT OF MOTION TO AMEND**

**INTRODUCTION**

Plaintiffs do not dispute that diversity jurisdiction exists. *See* Dkt. 17 at 1 ("federal diversity jurisdiction under 28 U.S.C. § 1332 may have existed"). Instead, Plaintiffs' sole argument is that Defendant Google LLC's ("Google") removal was untimely under 28 U.S.C. § 1446(b) because jurisdiction was "apparent from the outset." *Id.* Plaintiffs are wrong for two independent reasons: (1) the Original Complaint (Dkt. 11) did not allege the citizenship of the only plaintiff and (2) the Original Complaint did not unambiguously specify the amount in controversy.[1] The removal clock could not start without both of

---

[1] Although *both* issues were discussed during the parties' meet and confer, only the second issue was addressed in Plaintiffs' Motion. Declaration of Matthew Macdonald ¶4
(continued...)

these missing pieces of information.  Therefore, Google's removal was timely.  *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000); *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-96 (9th Cir. 2005).

*First*, the Original Complaint, served on March 14, 2025 (Dkt. 18-1), did not allege the citizenship of Plaintiff LTD LED, LLC dba Wolf River Electric ("Wolf River"), the sole plaintiff.  "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *E3 Biofuels, LLC v. Biomethand, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) (citation omitted); *see also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2012) (same).  The Original Complaint did not identify Wolf River's members, let alone identify their citizenship.  Dkt. 11 at 3 ¶1.

The absence of citizenship information in the Original Complaint (and related documents) is fatal to Plaintiffs' Motion to Remand.  As one court held, "the Defendant need not conduct research to determine if diversity exists for the purposes of the initial thirty day time period."  *Mt. Carmel Mut. Ins. Ass'n v. CNH Am., L.L.C.*, No. 12-4112, 2013 U.S. Dist. LEXIS 24413, at *9 (N.D. Iowa Feb. 22, 2013).  "Rather, the Defendant should be able to rely on the words contained in the initial pleading."  *Id.*  The Original

---

("Macdonald Decl.").  Plaintiffs have therefore forfeited any argument as to this issue. *See Sheikhpour v. Highland Bank Corp.*, No. 10-4223, 2011 U.S. Dist. LEXIS 60096, at *7 (D. Minn. May 4, 2011) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.") (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006)); *see also In re Allstate Ins. Co.*, 8 F.3d 219, 223 (5th Cir. 1993) ("where subject matter jurisdiction exists and any procedural shortcomings may be cured by resort to § 1653, we can surmise no valid reason for the court to decline the exercise of jurisdiction").

Complaint did not identify the citizenship of Wolf River's membership and, thus, could not—and did not—start Google's removal clock.

The first hint of information about Wolf River's members came in the May 23, 2025 Amended Complaint (Dkt. 11-13) and, consistent with section 1446(b)(3), Google removed on June 9, 2025 (*i.e.*, less than 30 days later). *See* Dkt. 1 at 3-4 ¶10. Accurate citizenship information was not actually provided until July 9, 2025, when Wolf River filed its Corporate Disclosure Statement. Dkt. 21. For this reason alone, the Motion to Remand should be denied. *See Mt. Carmel*, 2013 U.S. Dist. LEXIS 24413 at *9; *see also Gibson v. Clean Harbors Env't. Servs.*, 840 F.3d 515, 519 (8th Cir. 2016) (same).

*Second*, Plaintiffs' alternate defamation theories, allegations regarding unrecoverable *revenue* losses, and statements of harm untethered to any settlement demands did not provide an unambiguous disclosure of the amount in controversy in this case. Only Plaintiffs' June 3, 2025 Initial Disclosures made clear what damages would be sought. Dkt. 1-2. Google removed just six days later. Dkt. 1. For this additional, independent reason, the Motion to Remand should be denied.

**RELEVANT BACKGROUND**

On March 14, 2025, Wolf River served the Original Complaint. Dkt. 18-1. Wolf River did not file the Original Complaint with the Court, choosing instead to rely on a state court 'pocket service' procedure, which requires filing within a year of service. *See* Minn. R. Civ. P. 5.04; *see also* Dkt. 18-2 at 6 ("This lawsuit has not been filed with the court…."); *id.* at 7 ("Wolf River has deliberately chosen to serve this lawsuit without formally filing

it in court….").  The Original Complaint alleged defamation and violation of the Minnesota Deceptive Trade Practices Act.  *See* Dkt. 11 at 3-41 ¶¶1-264.

With respect to citizenship, the Original Complaint stated that Wolf River "is a Minnesota Limited Liability Company with a principal place of business located at 101 Isanti Parkway Northeast Suite G, Isanti, MN 55040."  *Id.* at 3 ¶1.  The Original Complaint did not identify Wolf River's members or their citizenship.  *Cf. id.* at 3-41.

As to the amount in controversy, the Original Complaint repeatedly alleged that "Google is liable to Wolf River for defamation in an amount in excess of $50,000" based on alternative defamation liability theories.  Dkt. 11 at 32-33, 38-39 ¶¶212, 224, 253, 264; *see also id.* at 40 (Prayer for Relief ¶¶1-3).  No damages amount was specified for the Deceptive Trade Practices Act claims.  *Id.* at 39 ¶¶261-263.  The Original Complaint also included allegations concerning lost *revenue* from contracts but did not specify any lost profits or provide information regarding cost margins.  *Id.* at 21-22 ¶¶122-125, 127-130.

Concurrently with the Original Complaint, Wolf River served a Rule 408 Offer to Compromise Letter (the "Settlement Letter") from Wolf River's General Counsel (Mr. Nicholas J. Kasprowicz) dated March 13, 2025.  Dkt. 18-2.  The Settlement Letter did not include information about Wolf River's membership or citizenship.  *See id.*  As to the amount in controversy, Wolf River claimed that its CFO prepared a "financial analysis" that it had suffered "$24.7 million in damages," but provided no information regarding that supposed analysis.  *Id.* at 2 (emphasis omitted); *accord* at 3.  This claim was not included in a court filing subject to Rule 11 requirements, such as the Original Complaint.  *Cf.* Dkt. 11 at 3-41.  The Settlement Letter also did not indicate that Wolf River would seek this

-4-

amount in damages from a jury or offer to settle for $24.7 million. *Cf.* Dkt. 18-2 at 2-3. Indeed, the original lost revenue figures listed in the Original Complaint were far lower— less than $400,000. Dkt. 11 at 21-22 ¶¶122-25, 127-30. Contrary to Mr. Kasprowicz's declaration, *cf.* Dkt. 18, ¶5, during the parties' later meet and confer on April 18, 2025, Mr. Kasprowicz did not quantify *any* damages figure and emphasized that Wolf River was not in a position to make a settlement demand or quantify any damages figure before taking discovery. Macdonald Decl. ¶2.

On May 23, 2025, without seeking leave from Google or the state court, Plaintiffs filed an Amended Complaint. Dkt. 11-13 at 4-49. Most relevant here, Plaintiffs added Justin Nielsen, Vladimir Marchenko, Luka Bozek, and Jonathan Latcham as plaintiffs (the "Individual Plaintiffs"). *Id*. at 4-6 ¶¶4-15. The Amended Complaint specifically stated that each Individual Plaintiff is "a Minnesota resident." *Id.* ¶¶4, 7, 10, 13. It did not identify Wolf River's members, but indicated that each Individual Plaintiff was either a co-founder or executive. *Id.* ¶¶6, 9, 12, 15.

On June 3, 2025, Plaintiffs served their initial disclosures and claimed the following damages: Wolf River ($110,000,000.00 to $210,000,000.00 excluding attorneys' fees, investigative costs, and litigation costs); Justin Nielsen ("anticipated to exceed $250,000"); Vladimir Marchenko (same); Luka Bozek (same); and Jonathan Latcham (same). *See* Dkt. 1-2 at 9-14.

On June 9, 2025, Google removed this action. Dkt. 1. On July 9, 2025, Plaintiffs moved to remand. Dkt. 15. The same day, Wolf River filed its Rule 7.1 Corporate Disclosure Statement in which it disclosed that its "sole member is Wolf River Holding

Co., a Nevada Corporation with its principal place of business in Isanti, Minnesota." Dkt. 21.

## LEGAL STANDARDS

"[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). For the removal clock to begin, the basis for removal must be readily apparent from the "pleading, motion, order, or other paper," and there is no requirement for a defendant to "glean" the jurisdiction-establishing information by implication or investigate that information. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011); *Gibson*, 840 F.3d at 519-22 (same); *see also Harris*, 425 F.3d at 693 ("every circuit court to consider the question has rejected the duty to investigate approach").

"Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). A defendant's clock under section 1446(b) only starts once an amended pleading, motion, order, or other paper establishes or reveals complete diversity of citizenship. *See Myles v. Wells Fargo Bank, N.A.*, No. 21-158, 2021 U.S. Dist. LEXIS 263948, at *3, *5 (S.D. Iowa Aug. 17, 2021), *aff'd*, 2023 U.S. App. LEXIS 5976 at *1 (8th Cir. Mar. 14, 2023).

Similarly, with respect to the amount in controversy requirement, the "thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when

the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount." *In re Willis*, 228 F.3d at 897.

## ARGUMENT

I.  **REMOVAL WAS TIMELY UNDER 28. U.S.C. § 1446(B)**

Because Google removed the case on June 9, 2025, the sole relevant question here is whether the existence of diversity jurisdiction was ascertainable from the four corners of a "pleading, motion, order or other paper" before May 10, 2025. *See* 28 U.S.C. § 1446(b)(3). For the reasons described below, it was not.

### A. Wolf River's Citizenship Was Not Apparent Until After May 10, 2025

Complete diversity was not ascertainable before May 10, 2025 because the Original Complaint included no allegations regarding Wolf River's citizenship.[2] *See* Dkt. 11 at 3 ¶1. That is, the Original Complaint alleges that Wolf River is an LLC but does not identify its members. *Id.* It then proceeds to provide incorporation and principal place of business information for the LLC. *Id.* But an LLC's citizenship is determined by the citizenship of its members, not the state of its formation or principal place of business. *See OnePoint*, 486 F.3d at 346. That membership information simply is not provided in the Original Complaint. *Cf.* Dkt. 11 at 3 ¶1.

Because the Original Complaint did not include the relevant LLC citizenship information, Google's removal "clock" did not begin to "tick" until that citizenship information was made apparent from the four corners of a "pleading, motion, order, or

---

[2] The Settlement Letter also does not include citizenship information for Wolf River. *Cf.* Dkt. 18-2.

other paper." 28 U.S.C. § 1446(b)(3). As one district court concluded, a "Defendant need not conduct research to determine if diversity exists." *Mt. Carmel*, 2013 U.S. Dist. LEXIS 24413 at *9. The facts of *Mt. Carmel* are worth examining more closely.

There, as here, the plaintiff sought a remand based on the argument that removal was untimely under 28 U.S.C. § 1446(b)(1). *Id.* at *5. As is the case here, that initial pleading did not provide all relevant citizenship information. *Id.* at *6. Instead of providing *both* the state of incorporation *and* the principal place of business, the complaint in *Mt. Carmel* stated only that: "Plaintiff is a county mutual insurance association doing business in Iowa." *Id*. Nevertheless, the plaintiff argued that its complete citizenship information was "ascertainable" because its state of incorporation was available on the Iowa Secretary of State's website. *Id.* at *8. The Court rejected this argument. It concluded there was no duty to investigate "for the purposes of the initial thirty day time period." *Id.* at *9 (citing *Knudson*, 634 F.3d at 974; *In re Willis*, 228 F.3d at 896). It further concluded: "It would be illogical to determine that amount in controversy must be explicitly stated in the Complaint to trigger the thirty day clock, but the thirty day clock automatically runs on the diversity issue and the Defendant must either 'know' that the Plaintiff is diverse or research the issue within the thirty days." *Id.* at *11; *see also Gibson*, 840 F.3d at 519 (no duty to "perform an independent investigation into a plaintiff's indeterminate allegations to determine removability" (citation omitted)).

The same outcome is warranted here. The Original Complaint lacked allegations about Wolf River's citizenship, and so did not start the removal clock. Dkt. 11 at 3 ¶1. During multiple meet-and-confer discussions, Plaintiffs have not identified anything that

could have started that clock. *See* Macdonald Decl. ¶4; Declaration of Justice Lindell ("Lindell Decl.") ¶¶9-10; *see also id.* Ex. D. Accordingly, Google's notice was timely. *See Gibson*, 840 F.3d at 520 (noting the Eighth Circuit has adopted a "bright line approach" that requires a "sufficiently detailed and unequivocal statement from which the defendant may unambiguously ascertain" federal jurisdiction).

It is worth briefly addressing one other issue on this point. At the time Google filed the Notice of Removal, Google (wrongly but reasonably) believed citizenship information was provided with service of the Amended Complaint on May 23, 2025. There, Plaintiffs identified four Individual Plaintiffs who were co-founders and/or high-ranking executives of Wolf River. Dkt. 11-13 at 4-6 ¶¶4-15. The Amended Complaint alleged that each resides in Minnesota, and Google reasonably believed that each was a Minnesota citizen.[3] Plaintiffs have offered no argument to the contrary.[4] *Cf.* Dkt. 17. Based on the reasonable belief that these Minnesota citizen founders and executives were Wolf River's only

---

[3] At least the Ninth Circuit has held: "At minimum, a person's residence constitutes some evidence of domicile. … [A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Adams v. West Marine Prods.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (citations omitted) (emphasis omitted); *see also Hargett v. RevClaims, LLC*, 854 F.3d 962, 967 (8th Cir. 2017) (diversity jurisdiction satisfied in notice of removal where defendant alleged citizenship, but plaintiff's complaint alleged only residency, because plaintiff did not dispute citizenship). Indeed, "[i]t is a longstanding principle that '[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

[4] Because Plaintiffs failed to address Google's citizenship allegations in the Notice of Removal, any such arguments are forfeit for purposes of this motion. *In re Allstate*, 8 F.3d at 223 (district court erred in remanding a case on the basis of inadequate allegations of citizenship because such procedural issues must be raised by the parties or else be forfeited).

"members," Google appropriately removed the case. Dkt. 1 at 3-4 ¶10; *see* Lindell Decl. ¶8.

As it turns out, Google was right that diversity jurisdiction existed but wrong about why. That does not defeat diversity jurisdiction. According to Plaintiffs' July 9, 2025 Corporate Disclosure Statement, Wolf River's only member is a Nevada corporation with its principal place of business in Minnesota. Dkt. 21. For this reason, and in an abundance of caution, Defendants have sought leave to amend the Notice of Removal to correct its jurisdictional allegations concerning Wolf River's membership.[5] *See infra*, Section II.

Moreover, Google's error concerning Wolf River's membership is not material. Google is a citizen of California and Delaware, not Nevada or Minnesota. Dkt. 1 at 4 ¶11. Thus, complete diversity exists, and Google's removal was timely because Wolf River's citizenship did not become apparent until long after May 10, 2025. *See, e.g.*, *Harris*, 425 F.3d at 697 (removal period triggered once complete diversity became clear); *Cioffi v. Solomon*, No. C-14-04139, 2014 U.S. Dist. LEXIS 163532, at *4 (N.D. Cal. Nov. 21, 2014) (same).

### B. Plaintiffs' Amount-In-Controversy Arguments Are Invalid

Plaintiffs' Motion to Remand should be denied for the additional (and independent) reason that no "pleading, motion, order, or other paper" made unambiguously clear that

---

[5] The Court also has discretion to deem the Notice of Removal amended or follow formal amendment. *See, e.g., Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 778 (8th Cir. 2014) (exercising discretion to "deem defective pleadings properly amended," where defendant's notice of removal contained deficient allegations regarding plaintiff's citizenship).

Plaintiffs sought more than $75,000 in damages before May 10, 2025. 28 U.S.C. § 1446(b)(3).

### 1. The Original Complaint Did Not Trigger Removal

Neither the Original Complaint nor the March 14, 2025 Settlement Letter were sufficient notice of the amount in controversy to start the clock. A pleading or "other paper" is sufficient to start the clock as to the amount and controversy only if it "explicitly" and unambiguously demands more than the jurisdictional minimum. *See In re Willis*, 228 F.3d at 897. It is not enough that a defendant might be able to figure out that the plaintiff will ask for more; the demand must be unambiguous. *Id.* Neither document meets this test.

The Original Complaint asserted three counts for which damages amounts were specified: defamation, defamation *per se*, and defamation by implication.[6] Dkt. 11 at 23-38 ¶¶136-253. As to each cause of action, Wolf River sought damages "in excess of $50,000." Dkt. 11 at 32-33, 38 ¶¶212, 224, 253. A demand for "in excess" of a number that is less than the jurisdictional minimum is insufficiently unambiguous to start the clock under *Willis*. *See Groeneweg v. Flint Hills Res., LP*, No. 08-4815, 2008 U.S. Dist. LEXIS 93723, at *5-7 (D. Minn. Nov. 18, 2008) (holding that a case only became removable when the plaintiff clearly indicated he was seeking an amount in excess of $75,000).

---

[6] No damages amounts were specified for Wolf River's Deceptive Trade Practices Act count, Dkt. 11 at 38-39 ¶¶254-264, or the Declaratory Relief count, *id.* at 39-40 ¶¶265-268.

Contrary to Plaintiffs' arguments, *cf.* Dkt. 17 at 9-10, Plaintiffs' three counts cannot be aggregated to form a single demand for $150,000 when the underlying conduct for each defamation count is the same. Instead, these counts simply offer alternative theories of recovery. Thus, defamation *per se* allows damages to be presumed. *See, e.g.*, *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. Ct. App. 2001) ("'defamatory per se' defines a rule of damages, not of defamatory meaning").[7] Defamation by implication allows recovery by implied, rather than outright, defamatory statements. *Lewis v. Abramson*, 673 F. Supp. 3d 72, 86 (D. N.H. 2023) (explaining defamation by implication is a subset of a defamation claim).[8] The three demands for "in excess of $50,000" are for the same conduct and the same core cause of action and cannot be aggregated to a single claim for more than $75,000. *See* Dkt. 11 at 32-33, 38 ¶¶212, 224, 253. Alternative theories of recovery for the same conduct does not result in the aggregation of damages for purposes of calculating the amount in controversy. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997) (if two claims are alternative bases of recovery for the same harm under state law, a party cannot recover damages for both claims, and thus the two claims cannot be aggregated).[9]

---

[7] *See also, e.g.*, *Craft v. Panera Bread Co.*, No. 14-5061, 2016 U.S. Dist. LEXIS 48598, at *8-9 n.2 (D. Minn. Apr. 11, 2016) (same); *Longbehn v. Schoenrock*, 727 N.W. 2d 153, 161 (Minn. Ct. App. 2007) (same).

[8] *See also, e.g.*, *Heyland v. Des Moines Cty.*, 947 N.W. 2d 664, 675 (Iowa Ct. App. 2020) (same); *Delashaw v. Seattle Times Co.*, No. C18-0537, 2020 U.S. Dist. LEXIS 124166, at *66 (W.D. Wash. July 14, 2020) (same).

[9] *See also, e.g.*, *Roth v. Bierman*, No. 10-239, 2010 U.S. Dist. LEXIS 62443, *12 (N.D. Ohio June 23, 2010) (same); *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 301 (E.D.N.Y. 2005) (same).

Plaintiffs' reliance on *Turntine* is inapt. *See* Dkt. 17 at 9 (citing *Turntine v. Peterson*, 959 F.3d 873 (8th Cir. 2020)). There, the Eighth Circuit assessed whether removal was proper where *defendants*, in their notice of removal, aggregated damages for multiple claims to show that the complaint pleaded "in excess" of $75,000. While it's true that *defendants* may aggregate damages to allege the amount in controversy is satisfied when "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum," it is incorrect that such indeterminate allegations trigger the removal period. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).[10] Further, the complaint in *Turntine* alleged three separate causes of action for defamation based on independent harms (two counts of libel and one count of slander), whereas Wolf River merely alleged three alternative theories of defamation liability for the same harm. *Compare Turntine v. Peterson*, No. 4:19-cv-00107-RLW, Dkt. 1-4 (E.D. Mo. Jan. 25, 2019), at 5-10 ¶¶17-40 *with* Dkt. 11 at 23-38 ¶¶136-253.

In addition, Wolf River's factual allegations about lost business are similarly insufficient to start the jurisdictional clock because they are allegations about *revenue*, not *profits*. Wolf River's total claimed lost revenue is just under $400,000. Dkt. 11 at 21-22 ¶¶122-25, 127-30. The Original Complaint says nothing about Wolf River's profit margins. *Cf.* Dkt. 11 at 3-41. Indeed, those margins would have to be very high for Wolf

---

[10] Plaintiffs mistakenly conflate the issue of timelines of removal with the "factual inquiry into whether the case is substantively appropriate for removal." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). But the moment a case becomes removable and the moment the removal clock starts to run "are not two sides of the same coin." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n. 3 (9th Cir. 2013).

River's losses to exceed the jurisdictional minimum. Allegations about total contract value hardly constitute an explicit and unambiguous demand for damages. *See In re Willis*, 228 F.3d at 897.

A defendant may be required to "apply a reasonable amount of intelligence in ascertaining removability," Dkt. 17 at 10 (quoting *Kuxhausen*, 707 F.3d at 1140), but they are not required to employ a crystal ball. Google is not required to guess what Wolf River's claimed lost profits were. Courts have held that mere allegations of lost revenues were insufficient to satisfy the jurisdictional amount in controversy minimum where plaintiffs did not present "any indication" of "actual net profits from these 'lost revenues.'" *See, e.g., Brown v. Hitesh Patel*, No. 24-2189, 2025 U.S. Dist. LEXIS 87971 at *6-7 (M.D. Fl. May 8, 2025). That is the case here—Wolf River makes no claim that the alleged lost contracts "made *profits* . . . in an amount exceeding $75,000." *Pucket Mach. Co., Inc. v. United Rentals, Inc.*, 342 F. Supp. 2d 610, 616 (S.D. Miss. 2004). Contrary to the burden Plaintiffs attempt to impose on Google, defendants have no duty to "perform an independent investigation" into Plaintiffs' "indeterminate allegations" of lost contracts to determine the amount in controversy had been satisfied for removability. *Gibson*, 840 F.3d at 519.

Accordingly, the Original Complaint did not contain sufficient allegations to explicitly disclose an amount in controversy satisfying the jurisdictional minimum and did not trigger the removal clock.

## 2. The Settlement Letter Did Not Trigger Removal

The Settlement Letter similarly did not start the clock because it also did not "specifically and unambiguously state" that Wolf River would seek in the litigation to recover the asserted losses or that Wolf River would "definitively and finally settle" the matter for that amount.

To start, the Settlement Letter was speculative, non-final, and did not even set forth a monetary demand. Although it included an unsupported calculation of alleged harm ($24.7 million), it did not ask Google to pay this amount or indicate that doing so would resolve the matter. *See* Dkt. 18-2 at 2-3. Even if it had, the Eighth Circuit has held that unless such a demand "specifically and unambiguously" stated that plaintiffs would "definitively and finally settle the matter for the recommended sum," that would not trigger the clock under 28 U.S.C. § 1446(b)(3). *Gibson*, 840 F.3d at 519.[11] The facts in *Gibson* illustrate the deficiency of Plaintiffs' arguments to the contrary.

In *Gibson*, the issue concerned whether diversity jurisdiction under the Class Action Fairness Act was appropriate, which required an amount in controversy of over $5,000,000. *See* 840 F.3d at 518. The complaint denied the existence of federal jurisdiction based on

---

[11] Plaintiffs are correct that settlement letters *can* constitute "other papers" under 28 U.S.C. § 1446(b)(3). *See* Dkt. 17 at 11. However, Minnesota courts still assess whether they explicitly disclose damages exceeding the jurisdictional minimum. Courts have come out both ways on this question after applying this fact specific analysis. *Compare Repco Inc. v. Flexan, LLC*, 2019 U.S. Dist. LEXIS 40310 (D. Minn. Mar. 13, 2019) (settlement demand letter containing detailed analysis supporting claim that damages exceeded $3 million and specifically stating that plaintiff would settle the matter for $950,000 satisfied amount in controversy requirement), *with Gibson*, 840 F.3d at 521-22 (settlement demand letter failed to provide necessary detail and clarity for defendant to "unambiguously ascertain" amount in controversy requirement had been satisfied).

the amount in controversy requirement. *See id.* at 517. But, after filing, the plaintiffs' counsel sent a letter "recommend[ing] a total payment of $6,500,000 to resolve the case." *Id.* (internal markings removed). A little over a month later, plaintiffs filed an expert report with the plaintiffs' damages claims and the "scientific methodology" supporting the damages analysis. *Id.* at 518. Less than 30 days after receiving the expert report, the defendant removed the case. *See id.* The plaintiff argued this removal was untimely because the amount in controversy could have been understood from the settlement letter. *See id.* The district court agreed and remanded the case back to state court. *See id.* at 519. The defendant appealed. *See id.* The Eighth Circuit vacated the remand and ordered federal proceedings to continue. *See id.* at 522.

The Eighth Circuit's analysis proceeded from the well-established, "bright-line approach" requiring the existence of federal jurisdiction to be "unambiguous" from an "amended pleading, motion, order, or other paper." *Id.* at 520. It made clear that a defendant is *not* obliged to conduct any "independent investigation into a plaintiff's indeterminate allegations to determine removability." *Id.* (quoting *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016)); *see also id.* (collecting cases from appellate courts around the country). Having set forth this rule, the Eighth Circuit concluded the plaintiffs' settlement letter did not meet the cut. *See id.* at 521. The settlement letter did not indicate that payment of $6,500,000 would resolve the matter, it merely offered a "recommend[ation]." *Id.* at 519. The letter also lacked support for its estimates as to the underlying basis for the alleged harm. *See id.* at 521. The expert report provided this information. *See id.* at 522. Because the expert report was the first "other paper" from

which a damages claim in excess of $5,000,000 could be "unambiguously" determined, the Eighth Circuit concluded removal was timely under 28 U.S.C. § 1446(b)(3). *Id.* So too here.

Plaintiffs' reliance on *Repco Inc.* for this point is misplaced. Dkt. 17 at 12-13. In that case, the plaintiff's settlement demand letter contained a detailed analysis supporting the letter's claim that plaintiff suffered over $3 million in damages. The letter's analysis included a table projecting lost commissions from existing customers for five years and attached a PowerPoint providing plaintiff's projections over a five-year period. *See Repco Inc. v. Flexan, LLC*, No. 19-cv-00041-DSD-HB, Dkt. 21-5 at 3-5. The letter also clearly identified that a payment of $950,000 would resolve the matter. *Id*. at 6. Such facts are not present here.

Here, Wolf River's Settlement Letter did not indicate that payment of $24.7 million would resolve the matter. Dkt. 18-2 at 2-3. Indeed, the Settlement Letter here did not even go so far as making a "recommendation" that Google pay such an amount. *See id.*; *see also* Lindell Decl. Ex. A. And it included *zero* analysis as to the origin of these numbers. *See id.* The first unambiguous calculation of damages claims was in Plaintiffs' initial disclosures, which they provided on June 3, 2025—*i.e.*, well within the 30-day period under 28 U.S.C. § 1446(b)(3). Dkt. 11-2 at 8-13. Accordingly, Google timely removed the matter on June 9, 2025. *See Gibson*, 840 F.3d at 522; *see also Groeneweg*, 2008 U.S. Dist. LEXIS 93723 at *5-7.

## II. LEAVE TO AMEND SHOULD BE GRANTED

To the extent Google's citizenship allegations must be corrected, such a defect is technical, not substantive, and may be cured under 28 U.S.C. § 1653. Courts in the Eighth Circuit and elsewhere routinely allow amendment of "incorrect statements about jurisdiction that actually exists" under 28 U.S.C. § 1653. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989); *Jones v. Kremer*, 28 F. Supp. 2d 1112, 1113 (D. Minn. 1998) (the District of Minnesota follows "the national trend of allowing amendments for 'technical defects,' but not for 'substantial defects.'"); *see also* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3733 (4th ed. 2009) ("an amendment of the removal notice may . . . correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount.").

Here, the record easily satisfies the liberal standard that courts should permit the action "to be maintained if it is at all possible to determine . . . that jurisdiction does in fact exist." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Bottling Grp., LLC*, No. 07-2315, 2007 U.S. Dist. LEXIS 75630, at *11 (D. Kan. Oct. 10, 2007) (citation omitted). Although the Notice of Removal incorrectly stated that Plaintiffs Justin Nielsen, Vladimir Marchenko, and Luka Bozek were the only members of the limited liability company, Dkt. 1 at 3-4 ¶10, Plaintiffs' Corporate Disclosure Statement filed alongside the Motion to Remand is a definitive statement that confirms diversity of citizenship. Dkt. 21. Thus, complete diversity of citizenship exists in this case, and this Court should permit Google to correct its misstatement regarding the citizenship of the members of the LLC in the Notice of Removal accordingly. *Le Neave v. North America Life Assurance Co.*, 632 F. Supp. 1453,

1454-56 (D. Minn. Apr. 16, 1986) (defendants were granted leave to amend a notice of removal to include further jurisdictional facts supporting diversity jurisdiction, including allegations of citizenship).

## CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiffs' Motion to Remand and grant Google's Motion for Leave to Amend Notice of Removal.

**GREENSTEN SELLERS, PLLC**

Dated: July 16, 2025

*/s/ Justice Ericson Lindell*
JUSTICE ERICSON LINDELL (MN 0312071)
121 South 8th Street, Suite 1450
Minneapolis, Minnesota 55402
Tel. 763.285.4684
justice@greensteinsellers.com

MATTHEW A. MACDONALD
(*pro hac vice*)
ARIEL C. GREEN ANABA
(*pro hac vice* pending)
EMILY R. ORMAN
(*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI PROFESSIONAL CORPORATION**
953 East 3rd Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (323) 210-7329
matthew.macdonald@wsgr.com
aanaba@wsgr.com
eorman@wsgr.com

*Counsel for Google LLC*